The Judges delivered their opinions.
JUDGE TUCKER
(after stating the case) observed. This case in many of its circumstances so nearly resembles that of Pendleton v. Stuart, that the same reasons which governed in that case appear to apply to this, in part. In both, the purchaser had a much better opportunity of knowing the lands than the seller. Here the words of the bond do-not amount to a warranty of the quantity inasmuch as, in speaking thereof, there is this caution used ; “said to contain 370 acres, be it more or less, to wit, “all that tract left him by his father John Cunningham, deceased.” These circumstances indicate a contract in gross, and not by the specific number of acres. Neither the seller nor the buyer appears to have had access to any title-deeds. The old marked lines and corners noticed by the surveyor may have misled them both ; or may, in fact, be the true lines-of the original survey, or patent, lost 336 or mislaid among *the records of the General Court; and, if so, Cunningham was entitled, perhaps, to a patent for the surplus under the 46th section of the land-law. Be that as it may, here has been no actual eviction or expulsion of Hull from the lands not comprehended within the lines of Cunningham’s deed. What then is the damage he has sustained ? Exactly what the Chancellor has supposed. Had he brought a suit at law upon the bond, after he had taken-up and patented the lands, and thereby secured them to himself, a Jury .could not have given him more than the Chancellor’s decree probably allows him. Having elected to come into a Court of Equity, he certainly cannot have vindictive damages. Compensation for his trouble, and actual expenses in-securing his title, seems to me to be the just measure that he is entitled to. Perhaps the decree ought to have directed that Cunningham should execute a release of the lands which he has taken up and patented; inasmuch as, by possibility, the original patent may be found, and the lines thereof comprehend the whole tract, which Hull now holds. But I lay no stress upon the omission, as that possibility seems very remote. Upon the whole, I think the decree ought to be affirmed, and the cause remanded to be proceeded on to a final decree, with this further direction, that Hull should be decreed to deliver up the title bond given him by Cunningham, and enjoined from bringing suit thereon.
JUDGE ROANE.
The grounds of the decision of this Court in the case of Pendleton v. Stuart, are decisive of the present case, and *133 •even go beyond it. That was a judgment upon a written agreement, whereby Stuart agreed to sell Pendleton “1,100 acres of land, more or less,” for 3001. A bill to enjoin the judgment was brought by the defendant, stating a pro rata sale, and also a deficiency of 160 acres appearing by an ex parte survey. There was no evidence, however, supporting the allegation of the bill, as to 337 *the pro rata sale, or varying the contract as appearing upon the face of the written agreement. The bill of injunction was dismissed by the Chancellor, and his decree of dismission affirmed, pro tanto, by this Court ; though the same was corrected as to an omission in the decree, to provide for procuring a title to the land actually contained within the patent. One of the judges was of opinion, that, if the case had stood upon the written agreement merely, he should probably have been of opinion, on the authority of Jolliffe v. Hite,(a) to allow for the deficiency, as that deficiency was greater than was reasonably imputable to the variation of instruments ; and this the rather, because the agreement was not to sell “a tract of 1,100 acres,” but to sell “1,100 acres of land but that the bill having asserted a pro rata sale, and the answer which was substantially responsive thereto, having stated a verbal communication, in which the buyer agreed to take the risk upon himself, (there being no contrary proof or circumstances,) he was of opinion to affirm the decree upon the merits. Another judge lays great stress upon the contiguity of Pendleton’s residence to the land, and his better knowledge of the quantity than Stuart’s ; circumstances which emphatically exist in the case before us.
These principles are decisive of the present case, unless we say that a party is not as competent to take upon himself a risk, with respect to the manner in which the lines of a tract of land may run, as with respect to the actual number of' acres contained in the tract. In the case before us it is fully proved, that that risk was taken upon himself by the appellant, and that there was no concealment, fraud, misrepresentation, or deception, on the part of the appellee. It is also evident, that the appellee was not only as ignorant of the actual lines of his tract, as the appellant, (and probably more so,) but sold the land by the gross, and was particularly careful not to lay himself responsible for any particular boundaries or number of acres. Unless, therefore, we are prepared to say, that it is immoral and inequitable for a man to pay, and another to receive, money 338 *for more land than the one parts with and the other gets, under all possible circumstances whatsoever, (thus excluding the competency of a contracting party to take upon himself any risk as to lines and quantity,) a position that was negatived in the said decision of Pendleton v. Stuart, and by the opinion of Judge Pendleton and the Court in the said case of Jolliffe v. Hite, the appellee was entitled to recover the stipulated price in the case before us.
My opinion is, that the decree should be affirmed.
JUDGE ElvEMING.
This is a very plain case. The decree is right, and I am not for disturbing it.
Decree affirmed by the unanimous opinion of the Court.*

 1 Call, 301.

Note by the Reporter. Prom this and other cases it appears that, where a purchaser is entitled to relief in equity on the ground of a deficiency, the measure of relief depends upon circumstances. If the deficiency he very considerable, and the parties can he put in statu quo, the contract should he rescinded, if the purchaser request it. If the parties cannot he put in statu quo, or the purchaser do not apply for a rescission of the contract, an allowance should he made for the loss sustained; which allowance is, in general, the value of the land at the time of the contract, with lawful interest; (Nelson v. Matthews. 2 H. & M. 164;) the purchase-money furnishing- (as it seems) a proper standard of that value, where the actual value does not appear to he different; Lowther v. The Commonwealth, 1 H. & M. 201, and Judge Fleming’s opinion, 2 H. & M. 179; hut it seems, the actual value, when appearing to he greater than the purchase-money, is to he allowed. Nelson v. Matthews, Tucker’s and Roane’s opinions, 2 H. & M. 175, and 177. In this case, the actual loss sustained by Hull being only his expenses and trouble in getting the patent, and actual costs of suit, the court allowed him no more; the circumstances of his case making it an exception to the general rule.
It seems from Judge Tucker’s opinion in Nelson v. Matthews, 2 H. & M. 177, that if the purchase-money has been paid, and the purchaser he evicted, by a superior title, the measure of relief is the value at the time of the eviction, and not at the time of the contract. But Chancellor Taylor, in Lowther v. The Commonwealth, 1 H. & M. 202, decided otherwise. Ideo quaere.
In case of a deficiency in land purchased., the sum to he allowed as the actual value, is, in general, to be estimated by the average value per acre of the whole purchase, and not by the relative or intrinsic value of the part lost; (which rule may, however, be varied by circumstances;) 2 H. & M. p. 178; hut, in case of an eviction of part, the proper estimate of damages is the actual value of the partlost; ibid. p. 177; in estimating which, I presume, its relative as well as intrinsic value, should he considered.